UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

A.G.,

            Plaintiff,

      v.

NORTHBROOK INDUSTRIES,
INC., d/b/a UNITED INN AND
SUITES,

            Defendant.

CIVIL ACTION NO.
1:20-cv-05231-JPB

## ORDER

Before the Court is a Motion for Summary Judgment ("Motion") filed by

Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("United" or

the "Hotel").  ECF No. 118.  Having reviewed and fully considered the papers

filed therewith, the Court finds as follows:

## I.      BACKGROUND[1]

Plaintiff A.G. ("Plaintiff") alleges that United is liable for damages she

suffered when she was trafficked for commercial sex at United's hotel.  She

---

[1] The Court has evaluated the evidence presented by the parties in the light most
favorable to Plaintiff as the non-moving party, *see* Section II(A), *infra*, and the
facts set forth herein are deemed relevant and true for the limited purpose of
evaluating Defendants' motions for summary judgment.

asserts a tort claim for negligence and a beneficiary claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

Plaintiff was trafficked by Zaccheus Obie ("Obie") at United's hotel in 2017 when she was 17 years old.  She met Obie through his cousin and believed he would facilitate a job for her as a dancer at clubs.  Plaintiff did not understand that she would be engaging in commercial sex acts.  Obie transported Plaintiff and her friend from Commerce, Georgia to Atlanta.

On the night of June 22, 2017, Obie first took Plaintiff and her friend to a Red Roof Inn in Atlanta, where they performed commercial sex acts at his direction.

Obie subsequently took Plaintiff and her friend to the Hotel, where they were trafficked together from June 23 to June 26, 2017, under the watch of Obie and his associates, including Kikia Anderson ("Anderson") and Dontavis Carr ("Carr").  The property is an exterior access hotel, and guests and visitors can access the hotel rooms without going through the lobby.

Carr rented the room in which Plaintiff was trafficked.  Obie collected Plaintiff's earnings every morning and went to United's front desk to pay for the room.  Obie and his associates appeared familiar with the staff at the Hotel, and on one occasion, front desk personnel spoke with Obie and/or Carr by telephone

to confirm that Plaintiff and her friend could be given access to the room after they were accidentally locked out.

Plaintiff and her friend attracted clients for their commercial sex work at the Hotel by wearing provocative clothing and loitering in the Hotel's common areas.  They purchased condoms, food, drinks and hygiene supplies from the front office.

During the few days she spent at the Hotel, Plaintiff was forced to perform commercial sex acts with approximately 15 men.  Plaintiff's traffickers were armed, and they threatened her.  She believed they were in a gang.

From 2012 to 2016, the DeKalb County Police Department visited the Hotel at least seven times in connection with commercial sex crimes.  The property was known as a "problem hotel" for drugs and prostitution.  United's manager claimed to be aware of between five and six instances of prostitution at the hotel during the relevant period.  United called the police many times regarding unusual foot traffic in hotel rooms and spoke with the police regarding ways to reduce prostitution at the Hotel.

Commercial sex activity at the Hotel resulted in numerous violent incidents, including a shooting and physical altercations.  United had one

security guard that patrolled the property from 10:00 PM to 2:00 AM each night. The police recommended that United hire additional security, but United did not.

The majority owner of United lived onsite most of the year and asked staff to watch for crimes, such as commercial sex activities. He would call the police when he suspected illicit activities, and he encouraged employees to do the same.

## II.   DISCUSSION

### A.   Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court . . . is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact. *See id.* "[I]n deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). In the same vein, "'some metaphysical doubt as to the material facts'" is not sufficient to create a genuine dispute. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (stating that "the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment") (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**B.      Analysis**

Count I of Plaintiff's Complaint asserts a beneficiary claim under the TVPRA.  Count II of the Complaint asserts a claim for negligence.  United seeks summary judgment as to both counts of the Complaint.

**1.      TVPRA Claim (Count I)**

The TVPRA is a criminal statute that provides a civil remedy to victims of sex trafficking.  Under 18 U.S.C. § 1595(a), "[a]n individual who is a victim of a violation of [the criminal provisions of the TVPRA] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the] chapter)."  The elements of a § 1595(a) beneficiary claim have been the source of much debate among the courts.

The Eleventh Circuit Court of Appeals first set forth a test for a § 1595(a) beneficiary claim in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).  It held that:

> to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id*. at 726.  In developing this test, the court recognized that "[t]he district courts [were] all over the map on the meaning of the[] terms" and that its definition of the elements "depart[ed] from some courts and agree[d] with others."  *Id*. at 725.

The Court's analysis herein will focus on the participation element of the test in light of the arguments advanced by the parties.  Thus, the Court will look at whether United took part in a common enterprise relating to Plaintiff's trafficking (prong two).

To that end, the Eleventh Circuit has stated that "to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit."  *Id*. at 727.  To "participate" means "to take part in or *share with others in common* or in an association."  *Id*. (Emphasis added).

7

In *Doe #1*, the court found that the plaintiff's allegations were not sufficient to show a common venture or the franchisor's participation in it where she claimed only that the hotel franchisor "investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Id.* The court emphasized that "observing something [was] not the same as participating in it." *Id.* In short, the plaintiff was required to show that the defendant took some action in common with the traffickers or others at the hotel who violated the statute to further the object of the traffickers. *See id.*

The *Doe #1* court cited with approval the First Circuit Court of Appeals' opinion in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). As the *Doe #1* court explained, the *Ricchio* court found that the plaintiff had plausibly alleged that the hotel operators participated in a common venture with plaintiff's sex trafficker. *Id.* at 725-26. The trafficker had prior commercial dealings with the operators, which they agreed to reinstate, and the hotel operators were aware that the plaintiff was being used as a sex slave. *See K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (discussing the facts of *Ricchio*

in the context of the participation prong).  The operators also "nonchalantly" ignored the plaintiff's plea for help and her visibly battered and bruised condition, and they likely saw the trafficker kick and physically force the plaintiff back to the room when she tried to escape.  *Id*.  The *Doe #1* court concluded that those were the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker."  21 F.4th at 726.

In *K.H.*, the Eleventh Circuit recently had another occasion to consider what facts are necessary to demonstrate participation in a common venture for the purposes of a § 1595(a) claim.  The plaintiff in that case alleged that the operator knew or should have known that sex trafficking was occurring at its hotel based on online reviews, police reports and other visible indicators.  *K.H.*, 2024 WL 505063, at *3.  The plaintiff contended that the operator nevertheless engaged in a business relationship with her trafficker, pursuant to which the operator rented rooms to and collected fees from the trafficker over a period of approximately four years.

In its opinion affirming the lower court's dismissal of the case, the *K.H.* court referred to its prior approval of *Ricchio* and reiterated that facts indicating prior commercial dealings between the hotel operators and the trafficker coupled with the operators' acquiescence in the plaintiff's specific predicament

9

supported the First Circuit's finding that the hotel operators in that case participated in a common venture with the plaintiff's trafficker. *See K.H.*, 2024 WL 505063, at *3.[2]  The court reasoned that K.H.'s allegations, by contrast, "amount[ed] to contentions that [the hotel operator] financially benefitted from renting hotel rooms to [the] trafficker and that [the operator] observed signs of sex trafficking at the hotel." *Id.* at *3-4.  The court repeated its view (previously articulated in *Doe #1*) that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Id.* at 4 (citation omitted).

The Eleventh Circuit's conclusion in *K.H.* echoed the district court's opinion that to sufficiently allege a § 1595(a) beneficiary claim, the plaintiff had to allege that "[the hotel operator], the beneficiary, engaged in a common undertaking with . . . the trafficker." *K.H. v. Riti, Inc.*, No. 1:22-CV-3404-MHC, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023).  The district court expressed that a description of common behaviors associated with sex trafficking, which the hotel's employees are alleged to have observed, was not sufficient to find

---

[2] *K.H.* is an unpublished, per curiam opinion.  However, it has persuasive value as it relates to the facts of this case.

that the hotel operator or its employees took part in a common venture with the trafficker regarding the plaintiff.  *See id*. at *4.

The common thread in the Eleventh Circuit's opinions is a requirement that the plaintiff (i) show at least some connection between the hotel operator's and the trafficker's actions (the *common* venture) and (ii) identify what actions the operator took to advance the object of the joint undertaking (*participation* in the common venture).  The district court in *Doe (S.M.A.) v. Salesforce, Inc.* described the Eleventh Circuit's formulation of the test as a "require[ment] that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction."  No. 3:23-CV-0915-B, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024).

District courts in this Circuit have followed this mode of analysis. *Compare C.C. v. H.K. Grp. of Co.*, No. 1:21-CV-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022) (finding that the allegation that the defendants knew about and observed sex trafficking at their hotel was insufficient to establish the participation element of the TVPRA claim and dismissing the complaint because the plaintiff "fail[ed] to allege a common undertaking— between [the] [d]efendants and the alleged traffickers—involving risk and or

profit"); *A.D. v. Holistic Health Healing Inc.*, No. 2:22-CV-641-JES-NPM, 2023 WL 2242507, at *3 (M.D. Fla. Feb. 27, 2023) (dismissing the complaint where "no allegations [were] made that [the] defendant [provided lodging] with, or [in] association with, the traffickers for a common goal of sex trafficking or to profit from sex trafficking"); *with Does 1-4 v. Red Roof Inns, Inc.*, No. 1:21-CV-04278-WMR, 2023 WL 5444261, at *3 (N.D. Ga. Aug. 10, 2023) (deciding that a reasonable jury could find that the participation element was satisfied where, among other things, some employees played the role of lookout and notified traffickers when police were nearby or on the premises, and the hotel's management, upon receiving complaints of prostitution, instructed employees to book suspected sex workers in rooms located in the back of the hotel where they would be less visible to guests); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-CV-00844-SEG, 2024 WL 1928755, at *6–7 (N.D. Ga. Mar. 18, 2024) (concluding that "a reasonable jury could find that [the] [d]efendant did much more than just rent rooms to sex traffickers and observe signs of trafficking," where managerial employees took steps to facilitate trafficking at the hotel, including by visiting trafficking rooms while sex buyers were present to ask whether the buyers needed anything; permitting victims to solicit sex in the front desk area of the hotel; bartering with victims for sex and providing free lodging in exchange;

maintaining a relationship with traffickers; and failing to act when they saw the plaintiff chained to a bed and the trafficker's name scrawled on the wall in blood).[3]

Applying the reasoning of the foregoing cases here, the Court is not persuaded that the facts show that United participated in a common venture with Plaintiff's traffickers. As in the *K.H.* case, Plaintiff's allegations here boil down to a contention that United financially benefitted from renting rooms to Plaintiff's traffickers and that it had knowledge of and turned a blind eye to sex trafficking at the property.

However, the Eleventh Circuit expressed in *Doe #1* and confirmed in *K.H.* that United's observation of prostitution and sex trafficking at its property is not the same as United participating in it. Plaintiff must demonstrate that United acted pursuant to the common goal of the trafficking venture.

Yet, there is no evidence that United took steps *with* Plaintiff's traffickers to facilitate the traffickers' illicit activities. Instead, the record presented here shows that United took actions that would be expected to further the interest of a

---

[3] The *I.R.* case was decided after the Eleventh Circuit rendered its February 2024 opinion in *K.H.*, and, as the Court has done here, the district court in *I.R.* looked at whether the plaintiff had demonstrated that the defendants did "more" than rent rooms to traffickers and observe trafficking at their property.

hotel enterprise. This included renting rooms, collecting payment for the rooms and providing additional towels to guests upon request.

It is not enough for the purposes of the participation prong that United knew or should have known that sex trafficking was occurring at its property. For participation liability to attach under § 1595(a), Plaintiff must show *more* than United's knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers. For example, in the *Ricchio* case, which the Eleventh Circuit cited as demonstrating the requisite "more," the trafficker explicitly discussed an agreement to continue prior commercial dealings with the hotel operators, and the hotel operators ignored the abuse of the plaintiff, including the trafficker's violent restraint of the plaintiff when she tried to escape. Likewise, in *I.R.*, the district court found *more* where the hotel's managers visited the trafficking rooms to assist sex buyers; solicited and bartered with victims for sex; and ignored the plaintiff being chained to a bed.

The Court's position is not that Plaintiff must show participation identical to the level in *Ricchio* or *I.R.* in order to clear the bar. Rather, Plaintiff must show at least some connection between United's and her traffickers' actions, and she must show that United took steps to advance the object of that relationship. She has failed to do so.

14

Further, the Court disagrees that the volume of room rentals by Plaintiff's traffickers establishes the requisite common venture and participation in it. Carr rented a room from United on February 1-3, 2017 (before Plaintiff was trafficked there); on June 23-26, 2017 (in connection with Plaintiff's trafficking); and on July 2-4, 2017 (unrelated to Plaintiff's trafficking). Anderson rented a room on July 20, 2017 (unrelated to Plaintiff's trafficking). That is a total of only eleven nights in three different months at a property that has numerous rooms for rent 365 nights a year. The Court cannot say that those rentals indicate a special relationship or common venture between Plaintiff's traffickers and the Hotel. In comparison, the trafficker in *K.H.* rented rooms at the same property over a four-year period, and the Eleventh Circuit did not equate that level of repeat business to participation in a common venture.[4]

---

[4] The Court notes that some district courts have referred to a continuous business relationship as one way in which plaintiffs can "'connect the dots' between the plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit." *K.H.*, 2023 WL 3644224, at *3 (citation omitted). *See also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023) (stating that a plaintiff may sufficiently allege participation by showing "'a continuous business relationship'" between the participant and the trafficker (citation omitted)). This test looks at whether the hotel operator continuously "rented rooms to people it knew or should have known were engaged in sex trafficking." *K.H.*, 2023 WL 3644224, at *3. However, the Eleventh Circuit has not adopted that reasoning. While a continuous business relationship could generally provide information relating to a defendant's participation in a common venture with traffickers, it is not the keystone of the Eleventh Circuit's participation test.

Additionally, the Court is not convinced that the participation prong can be viewed in isolation and disconnected from the other prongs of the test, as Plaintiff appears to propose.  Citing *Doe #1*, Plaintiff argues that all she needs to show is that United took part in a common undertaking or enterprise involving risk and potential profit.  The implications are that the venture need not involve the trafficker and that simply running a hotel business (*i.e.*, taking part in a commercial enterprise for profit) satisfies the participation prong.

But if that were true, the participation requirement would automatically be satisfied any time the defendant is a hotel operator or other commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking.  That cannot be what the Eleventh Circuit intended.  To the contrary, the Eleventh Circuit's opinions establish that the plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers.[5]

---

[5] Plaintiff should not construe the Court's previous order on United's Motion to Dismiss as finding that a plaintiff need show only that the defendant took part in an enterprise involving risk and potential profit.  That order relied in part on the allegation (taken as true at that stage of the litigation) that United's employees acted as lookouts for Plaintiff's traffickers.  At the summary judgment stage, Plaintiff must come forward with evidence and make a showing that the jury could reasonably find in her favor.  However, Plaintiff has not presented evidence showing that United did *more* than rent hotel rooms to the traffickers with the knowledge that sex trafficking occurred at its hotel.  For example,

Based on the foregoing analysis, the Court finds that Plaintiff has failed to satisfy the participation element of her beneficiary claim.[6]   Therefore, United's Motion as to Count I of the Complaint is **GRANTED**.

### 2.    Negligence Claim (Count II)

In a cause of action for negligence, the plaintiff must show that:  the defendant had a legal duty to conform to a particular standard of conduct; the defendant breached the standard; there is a legally attributable causal connection between the defendant's conduct and the resulting injury; and the plaintiff experienced some loss or damage from the alleged breach of the legal duty.  *See Freeman v. Eichholz*, 705 S.E.2d 919, 922 (Ga. Ct. App. 2011).   "The threshold issue . . . is whether and to what extent the defendant owes a legal duty to the plaintiff."  *McGarity v. Hart Elec. Membership Corp.*, 706 S.E.2d 676, 679 (Ga. Ct. App. 2011).

"The legal duty of care owed by a landowner to a person coming upon [a] property varies and is fixed according to the legal status of the person entering the premises."  *Freeman*, 705 S.E.2d at 922.  If the person is an invitee, a landowner owes the highest duty (the duty of ordinary care to keep the premises

---

Plaintiff has not presented evidence to support the allegation in the Complaint that United's employees served as lookouts for Plaintiff's traffickers.

[6] Given this finding, the Court need not address the other prongs of the test.

safe), but if the person is a licensee, the owner owes a lesser duty (to avoid causing willful or wanton injury). *See id*.; *McGarity*, 706 S.E.2d at 679 (stating that "the owner or occupier of land has a duty to exercise ordinary care to keep the premises and approaches safe for an invitee, while the owner or occupier has a duty not to [willfully] or wantonly injure a licensee"). Therefore, the threshold question in this case is whether Plaintiff was an invitee or a licensee at the Hotel.

Under O.C.G.A. § 51-3-1, a person is an invitee "[w]here an owner or occupier of land, by express or implied invitation, induces or leads [the person] to come upon his premises for any lawful purpose." On the other hand, a licensee "is one whose visit is 'merely for his own interests, convenience, or gratification.'" *Freeman*, 705 S.E.2d at 923 (citing O.C.G.A. § 51–3–2(a)(3); *Behforouz v. Vakil*, 636 S.E.2d 674, 675 (Ga. Ct. App. 2006)).

To determine whether a visitor has invitee status, courts look at "whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with one other than the owner or occupier." *Freeman*, 705 S.E.2d at 923. A visitor is deemed to be an invitee "if the enterprise is mutual, each lawfully

interested therein or there being a common interest or mutual advantage involved." *Candler Gen. Hosp., Inc. v. Purvis*, 181 S.E.2d 77, 79 (1971).

In *Davis v. Garden Services, Inc.*, the court ruled that a band player who was injured in the defendant's ballroom was an invitee of the hotel. 270 S.E.2d 228, 229 (Ga. Ct. App. 1980). The band player was a guest of an organization that had rented the ballroom for the purpose of hosting a party, and he entered the ballroom to provide services to the organization. *See id*. In this context, the court explained that the hotel owner and the band player had the necessary mutuality of interest. *See id*. The band player had an interest in providing musical services in the ballroom, and the hotel owner had a similar interest in the ballroom being used for the purpose for which it was rented. *See id*.

Similarly, in *Freeman*, the court found that the requisite mutuality of interest existed for an "authorized and properly admitted visitor[]" of a jail because she derived benefit from the opportunity to visit her friend, and the jail likewise derived benefit from the ability to use visitation rights to punish, reward and rehabilitate inmates. 705 S.E.2d at 923.

Finally, the court in *Anderson v. Cooper* found the requisite mutuality of interest where a nine-month-old child accompanied his father to a bakery. 104 S.E.2d 90, 94 (Ga. 1958). The court explained that the bakery received a benefit

19

from the child visiting the store because the bakery would have lost the opportunity to make a sale to the father had the bakery prevented the father from entering the bakery with the child to purchase his desired items.  *See id*.

By contrast, the court in *Jones v. Asa G. Candler, Inc.*, found that a plaintiff who was injured while visiting a doctor's office was a licensee and not an invitee because there was no mutuality of interest.  97 S.E. 112, 112 (Ga. Ct. App. 1918).  The plaintiff visited the doctor's office not to receive services from the doctor but for the purpose of soliciting a donation.  *See id*.  The court noted that "[i]t is well settled that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there."  *Id*. at 113.

In this case, Plaintiff attempts to show the requisite mutuality of benefit by arguing that she frequented United's lobby store to purchase condoms, food and other items.  She also contends that those purchases constituted the lawful purpose of her visit.  In her view, United induced her to come to the hotel by providing lodging and selling goods to her.

However, it is quite a stretch to argue that United invited or induced Plaintiff to visit its Hotel or that the purpose of Plaintiff's visit to United's

property was lawful.  Accepting that Plaintiff was coerced to stay at the Hotel does not change the reality that commercial sex was her purpose for being there. Plaintiff has not cited any authority and the Court is not aware of any support for the proposition that Plaintiff's patronage of the lobby store during her unlawful visit transformed that visit into one induced by United for a lawful purpose.

Indeed, the facts here are closer to those in *Jones*, where the court found that because the plaintiff visited the doctor's office for her own purpose—to solicit a donation—she could not claim invitee status.  In other words, Plaintiff has not demonstrated the mutuality of *lawful* interest or benefit between her and United that was present in cases like *Freeman* (the inmate's visitor and the prison had a shared interest in visitation rights for inmates), *Davis* (the hotel owner and the band player had a shared interest in the provision of musical services for the organization's party) and *Anderson* (the owner of the bakery and the customer had a shared interest in the bakery's goods).  The Hotel cannot be said to have a lawful interest in facilitating sex trafficking.

In that same vein, the subject matter of the alleged implied invitation was sex trafficking, which necessarily places Plaintiff outside the bounds of invitee status.  *See* O.C.G.A. § 51-3-1 (stating that an invitee comes upon the premises for a "lawful purpose"); *Freeman*, 705 S.E.2d at 922 (same).

For the reasons discussed above, the Court finds that Plaintiff was not an invitee of the Hotel and was merely a licensee.  As such, United's duty was to avoid willful or wanton injury to Plaintiff.  Since Plaintiff does not argue that United willfully or wantonly caused her injury, United is entitled to judgment as a matter of law on Plaintiff's negligence claim.  United's Motion as to Count II of the Complaint is therefore **GRANTED**.

### III.    CONCLUSION

As set forth in this opinion, United's Motion as to both counts of the Complaint is **GRANTED**, and Plaintiff's Complaint is hereby **DISMISSED**. The Clerk is **DIRECTED** to terminate all pending motions, except for Plaintiff's Motion for Sanctions, ECF No. 116, related to United's admitted failure to satisfy its discovery obligations.  The Court will issue a separate order scheduling a hearing on the Motion for Sanctions.

**SO ORDERED** this 14th day of June, 2024.

_____
**J. P. BOULEE**
United States District Judge