# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Lisa Ricchio<br><br>       Plaintiff,<br><br>    v.<br><br>Bijal, Inc. d/b/a/ Shangri-La Motel,<br>Ashvinkumar Patel, Sima Patel, and Clark<br>McLean,<br><br>       Defendants. | Civil Action No.:  1:15-cv-13519<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Lisa Ricchio (hereinafter "Ms. Ricchio"), by and through her attorneys, files this Complaint against Defendants Bijal, Inc. d/b/a Shangri-La Motel (hereinafter "Bijal" or "Shangri-La Motel"), Ashvinkumar Patel (hereinafter "Mr. Patel"), Sima Patel (hereinafter "Ms. Patel," collectively with Mr. Patel, "the Patels"), and Clark McLean (hereinafter "Mr. McLean"), and in support, alleges the following:

## PRELIMINARY STATEMENT

1.      This case arises under the Victims of Trafficking and Violence Protection Act of 2000 (hereinafter "TVPA"), 18 U.S.C. §§ 1589, 1590, 1591, 1592, 1593A, 1594, and 1595, and the Trafficking Victims Protection Reauthorization Act of 2003 (hereinafter "TVPRA"), 22 U.S.C. § 7101 *et seq*.

2.      Plaintiff Lisa Ricchio was a victim of human trafficking, rape, imprisonment, and severe physical and mental abuse.  In or around June 2011, Mr. McLean fraudulently enticed and tricked Ms. Ricchio to travel from Maine to Massachusetts under the guise that he was ill with

cancer.  Mr. McLean then held Ms. Ricchio against her will at the Shangri-La Motel in Seekonk,

Massachusetts, and physically, sexually, mentally, and verbally abused her over multiple days, in

an effort to weaken her defenses and to force her into working for him as a prostitute.  Mr.

McLean repeatedly raped and beat Ms. Ricchio during her captivity at the Shangri-La Motel.  He

prevented her escape from the motel by threatening physical violence against her and her family;

by confiscating her car, cell phone, driver's license, and keys; by withholding food from her; and

by force-feeding her drugs.  Mr. McLean also took Ms. Ricchio's money, which he used to pay

the motel bill and to purchase drugs and food for himself.

       3.     The Shangri-La Motel is owned by Bijal and was managed by the Patels.  On

information and belief, the motel is well-known as a hotspot for illicit activity.  In approximately

the past ten years, police have responded to more than 475 calls at the motel.  Locals describe the

motel as a haven for prostitution, exploitation, abuse, and drugs.  Neighbors report regularly

seeing pimps, women who are bloody, and women who have been abandoned on the motel's

premises.

       4.     The Patels knew Mr. McLean and personally witnessed Mr. McLean's abuse of

Ms. Ricchio, but they continued to harbor Ms. Ricchio and Mr. McLean in the motel and to

support Mr. McLean's illicit activity rather than coming to Ms. Richhio's assistance.  Mr.

McLean beat Ms. Ricchio in and out of the motel room, in full view of the motel office where

the Patels worked and lived.  The Patels also directly encountered Ms. Ricchio and Mr. McLean

multiple times during Ms. Ricchio's captivity.  On one occasion, Ms. Ricchio begged Ms. Patel

for help and told her that she was being held against her will.  Ms. Patel refused Ms. Ricchio's

pleas for help, even after Mr. McLean grabbed Ms. Ricchio, kicked her, and dragged her back to

his motel room in full view of Ms. Patel.  On another occasion, Mr. Patel exchanged "high-fives"

with Mr. McLean in Ms. Ricchio's presence, and they agreed that they should get started making money together again. The Patels refused to assist Ms. Ricchio throughout her captivity, even as Ms. Ricchio's worsening condition became increasingly visible. Instead, the Patels, and through them Bijal, permitted Mr. McLean to have the privacy he needed to traffic Ms. Riccho with impunity. The Shangri-La Motel accordingly served as a key instrumentality of the scheme to traffic Ms. Ricchio.

5.     Mr. McLean was ultimately convicted of four counts of Indecent Assault and Battery and is currently incarcerated in Bristol County, Massachusetts for his actions against Ms. Ricchio.

6.     The TVPA creates civil liability for people who commit trafficking and trafficking-related offenses, including those offenses enumerated in 18 U.S.C. §§ 1589, 1590, 1591, 1592, 1593A, and 1594. These offenses include: forcing someone into labor or sexual services; knowingly benefitting from such forced labor or services; confiscating someone's driver's license or other governmental document with the intent of keeping that person captive for purposes of forced labor; recruiting or harboring a person for labor or services against their will, especially if those actions include sexual abuse; attempting to commit these trafficking offenses; conspiring to commit these trafficking offenses; and benefitting financially from trafficking in persons.

7.     The TVPA expressly allows civil recovery both against the perpetrator of the crimes and against others who knowingly benefit from those crimes. *See* 18 U.S.C. § 1595(a).

8.     Each of the Defendants benefitted financially and/or received something of value from the exploitation, forced sexual services, and forced labor of Ms. Ricchio. Among other

things, Mr. McLean took Ms. Ricchio's forced sexual services, money, and other services, and Bijal and the Patels received money in the form of room rental fees.

9.      Ms. Ricchio seeks compensatory and punitive damages under 18 U.S.C. § 1595(a) from all Defendants, jointly and severally.

## PARTIES

10.     Plaintiff Lisa Ricchio is a citizen of Maine.

11.     On information and belief, Defendant Bijal is a Massachusetts corporation with its principal place of business at 1495 Fall River Avenue, Seekonk, Massachusetts.  At the time of the events described above, and on information and belief, Bijal owned and was doing business as the Shangri-La Motel at the same address.  On information and belief, the Shangri-La Motel is well-known in the area as a hotspot for crime; in approximately the past 10 years, local police have responded to more than 475 calls at the motel.  Neighbors of the motel also describe the Shangri-La Motel as a haven for prostitution, exploitation, abuse, and drugs.

12.     On information and belief, Defendant Ashvinkumar Patel currently resides in South Carolina.  At the time of incidents giving rise to this Complaint, Mr. Patel was a citizen of and resided in Seekonk, Massachusetts.

13.     On information and belief, Defendant Sima Patel currently resides in South Carolina.  At the time of incidents giving rise to this Complaint, Ms. Patel was a citizen of and resided in Seekonk, Massachusetts.

14.     On information and belief, Defendant Clark McLean is a citizen of Massachusetts and is currently serving a two-year sentence in the Bristol County House of Corrections in Massachusetts following his conviction for crimes committed against Ms. Ricchio.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this civil action arises under a federal law, 18 U.S.C. § 1595(a), the Trafficking Victims Protection Act.

16.     This Court also has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

17.     This Court has personal jurisdiction over Defendant Bijal because its principal place of business, the Shangri-La Motel, is located in the District of Massachusetts, and its conduct giving rise to Plaintiff's claims took place in the District of Massachusetts.

18.     This Court has personal jurisdiction over Defendants Ashvinkumar Patel and Sima Patel because their conduct giving rise to Plaintiff's claims took place in the District of Massachusetts and because, on information and belief, they were citizens of Massachusetts at the time of the incidents that gave rise to this Complaint.

19.     This Court has personal jurisdiction over Defendant McLean because his conduct giving rise to Plaintiff's claims took place, in substantial part, in the District of Massachusetts, and he is a citizen of Massachusetts.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Massachusetts.

## SUBSTANTIVE ALLEGATIONS

### Background.

21.     Mr. McLean conceived of and executed a scheme to traffic Ms. Ricchio as a forced prostitute.  In or around early June 2011, Mr. McLean fraudulently enticed Ms. Ricchio to travel from Maine to Massachusetts, brought Ms. Ricchio to the Shangri-La Motel, and held her hostage there for an extended period of time.  He physically, sexually, mentally, and verbally abused Ms. Ricchio and repeatedly raped her.  After wearing down her defenses with violence, abuse, drugs, and starvation, Mr. McLean told Ms. Ricchio that she would be forced to work as a prostitute under his control.

22.     On information and belief, the Patels managed the Shangri-La Motel where Mr. McLean held Ms. Ricchio captive, and Bijal owned and operated the Shangri-La Motel.  The Patels were the agents of the motel and of Bijal.  The Patels and Bijal knew or should have known of Mr. McLean's assaults on Ms. Ricchio and his acts against Ms. Ricchio that violated the TVPA.  The Patels and Bijal benefitted from Mr. McLean's actions by collecting money for the motel room despite clear indications that Ms. Ricchio was being held against her will and was being trafficked.  The Patels and Bijal also profited generally from increasing the motel's occupancy and from permitting illegal activity, including Mr. McLean's illegal activity, to occur freely on Bijal's property.  The Patels, and through them Bijal, permitted Mr. McLean to have the privacy he needed to traffic Ms. Riccho with impunity.  The Shangri-La Motel thus served as a key instrumentality of the enterprise to traffic Ms. Ricchio.

### Mr. McLean Fraudulently Lured Ms. Ricchio to Massachusetts.

23.     Ms. Ricchio and Mr. McLean became acquainted in Maine through a mutual friend during the winter of 2010-2011.

-6-

24.     In 2011, Mr. McLean began to call and text Ms. Ricchio, asking her to visit him in Massachusetts. Ms. Ricchio refused to go until Mr. McLean called her crying and told her that he had been diagnosed with cancer and that he needed her to visit him in the hospital immediately. As a result, Ms. Ricchio agreed to travel from Maine to Massachusetts to visit Mr. McLean in the hospital.

### Mr. McLean Took Ms. Ricchio into Captivity at the Shangri-La Motel and Raped and Abused Her. The Patels Ignored Ms. Ricchio's Plea for Help.

25.     On or about June 1, 2011, Ms. Ricchio drove from Maine to Massachusetts to visit Mr. McLean at the hospital. As she was travelling, Ms. Ricchio called Mr. McLean to confirm the address of the hospital, but Mr. McLean told her that he had discharged himself. He gave her an address in Seekonk, Massachusetts and told her to meet him there. When she arrived at the address, Mr. McLean told Ms. Ricchio to bring her things and to get into his car. Ms. Ricchio complied, assuming that Mr. McLean's odd behavior was due to pain from his supposed illness.

26.     Mr. McLean ordered Ms. Ricchio to drive, and following his directions, she drove them to the Shangri-La Motel. Mr. McLean instructed Ms. Ricchio to book a motel room in her name, which she did. Ms. Ricchio gave her name and cash for the room to the Patels. On information and belief, when visited later by the police, the Patels confirmed that Mr. McLean and Ms. Ricchio had stayed at the motel and recognized pictures of them.

27.     After they had checked into the Shangri-La Motel and arrived in their room, Mr. McLean became increasingly violent and abusive towards Ms. Ricchio. Mr. McLean confiscated Ms. Ricchio's belongings, including her cell phone, driver's license and car keys. Mr. McLean yelled and swore at Ms. Ricchio, calling her names and threatening her. Ms. Ricchio was terrified and begged Mr. McLean to bring her back to her car so that she could return home.

Instead, Mr. McLean forcibly raped Ms. Ricchio at the Shangri-La Motel. This rape – the first in a long series of rapes, assaults, and other abuses – left Ms. Ricchio visibly bruised.

28.     That night, after she thought Mr. McLean had fallen asleep, Ms. Ricchio attempted to escape. Ms. Ricchio encountered Ms. Patel as she was leaving the room. Disheveled and confused, Ms. Ricchio cried and told Ms. Patel that Mr. McLean was holding her captive against her will and abusing her. Ms. Ricchio begged Ms. Patel for help. Ms. Patel smiled, physically brushed off Ms. Ricchio, and started to walk away. At that point, Mr. McLean darted out of the motel room, screamed at Ms. Ricchio, grabbed Ms. Ricchio by the neck in full view of Ms. Patel, and physically kicked her and dragged her back into their room. Ms. Patel ignored Ms. Ricchio's pleas for assistance as Mr. McLean was dragging her away. After Mr. McLean had dragged Ms. Ricchio back into their room, he kicked her and threw her down on the floor between the bed and the nightstand. Ms. Ricchio remained on the floor for the remainder of the night.

### Mr. McLean Continued to Rape and Abuse Ms. Ricchio, Force Feed Her Drugs, and Starve Her.

29.     Mr. McLean continued to hold Ms. Ricchio in captivity at the Shangri-La Motel for an extended period of time covering multiple days. He repeatedly raped and assaulted her throughout this period in an effort to wear down her defenses and to groom her as a forced prostitute. Mr. McLean raped Ms. Ricchio at least once a day (and sometimes more) during her captivity. He also continued to physically, mentally, and verbally abuse her throughout this period. Mr. McLean yelled at Ms. Ricchio, called her derogatory names, kicked her, pulled her hair, and threw her to the floor. At one point, Mr. McLean even used a cigarette to burn Ms. Ricchio's vagina. Ms. Ricchio was left with a severe headache, neck pain, and bruising and

soreness, particularly over her lower body.  Mr. McLean threatened to harm Ms. Ricchio and her family if she attempted to escape.

30.     In order to ensure Ms. Ricchio's submission, Mr. McLean drugged her throughout her captivity at the Shangri-La Motel, forcing her to consume powerful oxycodone pills.  On the morning following his first brutal rape of Ms. Ricchio, Mr. McLean forced Ms. Ricchio out of the room and directed her to drive to an auto body shop, where he purchased drugs using cash he had stolen from Ms. Ricchio.  Mr. McLean then directed Ms. Ricchio to drive to a liquor store, where he made her purchase vodka and cranberry juice.  After they returned to the car, Mr. McLean forcibly shoved two oxycodone pills into Ms. Ricchio's mouth, and made her swallow them.  Mr. McLean and Ms. Ricchio would return to the auto body shop for drugs during her captivity, and Mr. McLean forced Ms. Ricchio to take more pills each day.  Mr. McLean did so in order to weaken and disorient Ms. Ricchio and to prevent her escape from the Shangri-La Motel.

31.     Mr. McLean also withheld food from Ms. Ricchio.  Over the course of her captivity, he forced her to drive to a number of different restaurants.  At each location, Mr. McLean either ordered Ms. Ricchio to buy food for him or used Ms. Ricchio's money to buy food for himself.  Mr. McLean refused to allow Ms. Ricchio to eat any food until the final day of her captivity.  Instead, he only permitted her to drink vodka and cranberry juice.  Mr. McLean did so in order to weaken and disorient Ms. Ricchio and to prevent her escape from the Shangri-La Motel.

32.     Mr. McLean stole all of the cash Ms. Ricchio had with her to rent the motel room and to buy drugs, alcohol, and food.  He also forced her to steal additional cash during her captivity.  Mr. McLean commanded Ms. Ricchio to make multiple trips to large retail stores,

including Wal-Mart and Target.  Once there, Mr. McLean forced Ms. Ricchio to use her personal checks to buy expensive electronics and then to return those items for cash.  Mr. McLean monitored Ms. Ricchio each time he executed this scheme, following her around the store and watching her to ensure she followed his instructions.  Mr. McLean immediately confiscated the cash Ms. Ricchio received through this ploy.

### The Patels Ignored Ms. Ricchio's Pleas for Help and Enabled Mr. McLean's Scheme.

33.     On information and belief, Mr. McLean was known to the Patels when he arrived at the Shangri-La Motel with Ms. Ricchio, having previously resided at the motel for a lengthy period of time.

34.     The Patels were present at the Shangri-La Motel throughout Ms. Ricchio's ordeal, and they encountered Mr. McLean and Ms. Ricchio multiple times throughout her captivity.  The Patels refused to come to Ms. Ricchio's assistance despite her obviously worsening condition.

35.     As referenced above, Ms. Patel witnessed Ms. Ricchio's first attempt to escape from the Shangri-La Motel and from Mr. McLean.  Ms. Patel refused to assist Ms. Ricchio in any way, even though Ms. Ricchio begged for help and told her that she was being held against her will.  Instead, Ms. Patel simply watched as Mr. McLean screamed at Ms. Ricchio, grabbed Ms. Ricchio by the neck, kicked her, and dragged her back into their room.

36.     On another occasion, Mr. McLean and Ms. Ricchio encountered Mr. Patel in the parking lot of the Shangri-La Motel.  Mr. Patel smiled and appeared happy to see Mr. McLean.  During this interaction, Mr. Patel and Mr. McLean shook hands and exchanged "high-fives."  Mr. McLean told Mr. Patel that he wanted to make some money with him by "getting this thing going" again.  Mr. Patel replied and acknowledged his agreement.  Ms. Ricchio was present for this conversation.  She had been brutally raped and assaulted the night before, leaving bruising

-10-

on her legs. She had not eaten since arriving at the motel. Mr. Patel made no comment on her rapidly declining appearance.

37. On another occasion, Mr. McLean and Ms. Ricchio saw Ms. Patel in the parking lot of the Shangri-La Motel. Ms. Patel and Mr. McLean warmly greeted one another. Ms. Patel ignored Ms. Ricchio, who at this point had not eaten for several days and was visibly bruised and haggard.

38. On another occasion, Ms. Ricchio made a second attempt to escape from the Shangri-La Motel. Mr. McLean intercepted Ms. Ricchio in the parking lot of the motel. He loudly yelled at her and called her names in full view of the management office of the motel. He grabbed her, kicked her legs, and dragged her back into the room.

39. On yet another occasion, Ms. Patel knocked on the door of the room where Mr. McLean was holding Ms. Ricchio hostage. Mr. McLean opened the door. When he did so, Ms. Patel observed Ms. Ricchio in the room; Ms. Ricchio was bruised, emaciated, and disoriented. Ms. Patel did not help Ms. Ricchio. Instead, Ms. Patel demanded additional money for the motel room.

40. Throughout all of these encounters with Mr. McLean and Ms. Ricchio, the Patels knew or should have known about Mr. McLean's trafficking-related acts against Ms. Ricchio.

**Mr. McLean Informed Ms. Ricchio of His Intention to Force Her into Prostitution.**

41. After multiple days of raping, abusing, threatening, and starving Ms. Ricchio, Mr. McLean told Ms. Ricchio that he used to own a massage business and that she would be a perfect fit for it. He explained to Ms. Ricchio that she needed to get used to this new lifestyle. He said that they would make a lot of money from her. Ms. Ricchio asked Mr. McLean if he was referring to her having sex for money, and Mr. McLean replied that she technically would be an

escort but that she would have to do whatever the clients wanted. She asked if that included sex, and he repeated that she would have to do whatever the clients wanted. She asked if he was serious, and he said that he was and that they were going to go to a nearby lingerie store later that night. Mr. McLean made it clear to Ms. Ricchio that he intended to force her into service as a prostitute under his control.

### Ms. Ricchio Escaped from Mr. McLean and the Shangri-La Motel.

42.      After multiple days of captivity at the Shangri La Motel, Ms. Ricchio finally made a successful escape.

43.      Mr. McLean forced Ms. Ricchio into his car and gave her driving instructions that led them back to the neighborhood where she initially had parked her own car. He instructed her to get into her car. Mr. McLean then had Ms. Ricchio drive them to a nearby Taco Bell to purchase food. Mr. McLean permitted Ms. Ricchio to eat for the first time during her captivity.

44.      After eating, Mr. McLean instructed Ms. Ricchio to drive her car to a park. He instructed her to park her car on the edge of the park. He then got out of the car, told her that he would be right back and instructed her to wait for him. Ms. Ricchio heard her phone ring and realized it was under the passenger seat. Ms. Ricchio also realized, after Mr. McLean had not reappeared for about thirty minutes, that this was her best chance to escape. She drove away, called her parents, and with their help, fled back home to Maine.

45.      After returning home, Ms. Ricchio fell into a deep depression. She remained severely bruised. Ms. Ricchio spent a significant amount of time working with a domestic violence agency in Maine and a wellness center in Utah in order to cope with the extreme trauma she survived.

46.     Ms. Ricchio contacted the police in Portland, Maine about the rapes.  In 2014, after a bench trial in Bristol County, Massachusetts, Mr. McLean was convicted of four counts of Indecent Assault and Battery relating to his offenses against Ms. Ricchio.  He was sentenced to two years in a correctional facility.

### FIRST CLAIM FOR RELIEF
### (ALL DEFENDANTS)

### Forced Labor in Violation of 18 U.S.C. §§ 1589, 1595(a)

47.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a).

49.     In violation of 18 U.S.C. §§ 1589 and 1595(a), Mr. McLean knowingly obtained forced sexual services from Ms. Ricchio by means of: force, threats of force, physical restraint, or threats of physical restraint in violation of 18 U.S.C. § 1589(a)(1); serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a)(2); and a scheme, plan, or pattern intended to cause Ms. Ricchio to believe that, if that she did not perform such labor or services, she would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)(4).

50.     On information and belief, and in violation of 18 U.S.C. §§ 1589 and 1595(a), Mr. and Ms. Patel and Bijal, through its management and personnel, knowingly benefitted from participation in Mr. McLean's venture, knowing or in reckless disregard of the fact that the venture was engaged in the providing or obtaining of Ms. Ricchio's labor or services by means of: force, threats of force, physical restraint, threats of physical restraint, serious harm or threats of serious harm, and/or a scheme, plan, or pattern intended to cause Ms. Ricchio to believe that, if that she did not perform such labor or services, she would suffer serious harm or physical

restraint. They also knowingly benefitted from participation in Mr. McLean's venture which they knew or should have known was engaged in an act in violation of the TVPA.

51.    On information and belief, Mr. and Ms. Patel and Bijal, through its management and personnel, knew, or recklessly disregarded the fact that Mr. McLean was obtaining Ms. Ricchio's forced labor and sexual services. They encountered Ms. Ricchio many times when she was visibly abused, drugged, or increasingly emaciated, and Ms. Ricchio even begged Ms. Patel for help in the face of Mr. McLean's abuse. The Patels personally observed Ms. Ricchio's emotional state and Mr. McLean's forceful conduct towards her, and knew or should have known the conditions under which Mr. McLean was holding Ms. Ricchio. On information and belief, the Patels and Bijal knowingly or recklessly participated in Mr. McLean's scheme to force Ms. Ricchio into forced prostitution. In addition, Mr. Patel and Ms. Patel, and through them Bijal, aided and abetted Mr. McLean's violations of 18 U.S.C. § 1589 by providing knowing and substantial assistance to him when they knew or should have known that Ms. Ricchio was being held against her will through means of actual force and threats of force, and that she was being abused and raped. The Patels and Bijal benefitted from Mr. McLean's actions including by collecting money for the motel room despite indications Ms. Ricchio was being held against her will, abused, and raped. The Patels and Bijal also profited generally from permitting illegal activity, including Mr. McLean's illegal activity, to occur on Bijal's property, burnishing the Shangri-La Motel's reputation as a haven for prostitution and criminal activity.

52.    As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

53.    Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SECOND CLAIM FOR RELIEF
## (ALL DEFENDANTS)

**Trafficking for the Purpose of Forced Labor in Violation of 18 U.S.C. §§ 1590, 1595(a)**

54.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.     Ms. Ricchio is authorized to bring this civil claim against all defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

56.     In violation of 18 U.S.C. §§ 1590(a) and 1595(a), Mr. McLean knowingly recruited, enticed, harbored, transported, and/or obtained Ms. Ricchio for labor or services.  Mr. McLean knowingly recruited and fraudulently enticed Ms. Ricchio to come to Seekonk, Massachusetts, with the intention of forcing her into sexual labor and services for him, and, ultimately, into forced prostitution for others.  Once she arrived in Massachusetts, he kidnapped her and stole her driver's license, phone, keys, and money.  He held her captive, repeatedly raped her, and made her steal money for him against her will.  He took these actions with the intention of providing Ms. Ricchio's forced commercial sexual labor services to others.  Mr. McLean knowingly benefitted financially from his recruitment, imprisonment, and abuse of Ms. Ricchio. He received free services and labor from Ms. Ricchio, lodging at the Seekonk Motel, and cash from Ms. Ricchio, which he used to buy food and drugs.

57.     On information and belief, and in violation of 18 U.S.C. §§ 1590(a) and 1595(a), Mr. and Ms. Patel and Bijal, through its management and personnel, knowingly harbored Ms. Ricchio at the Shangri-La Motel.  They also knowingly benefitted from participation in Mr. McLean's venture which they knew or should have known was engaged in an act in violation of the TVPA.  In addition, Mr. Patel and Ms. Patel, and through them Bijal, aided and abetted Mr.

McLean's violations of 18 U.S.C. § 1590(a) by providing knowing and substantial assistance to him when they knew or should have known that Ms. Ricchio was being held against her will, having been recruited, harbored, transported, provided, or obtained by any means for labor or services. The Patels and Bijal benefitted from Mr. McLean's actions, including by collecting money for the motel room despite indications Ms. Ricchio was being held against her will, abused, and raped. The Patels and Bijal also profited generally from permitting illegal activity, including Mr. McLean's illegal activity, to occur on Bijal's property, burnishing the Shangri-La Motel's reputation as a haven for prostitution and criminal activity.

58.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

59.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### THIRD CLAIM FOR RELIEF
### (ALL DEFENDANTS)

**Sex Trafficking by Force, Fraud, or Coercion in Violation of 18 U.S.C. §§ 1591, 1595(a)**

60.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

62.     In violation of 18 U.S.C. §§ 1591(a) and 1595(a), Mr. McLean knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Ms. Ricchio, and benefitted from her labor and services, knowing that means of force, fraud, coercion, and the combination of such means would be used to force Ms. Ricchio to engage in commercial sex

acts. Mr. McLean's acts towards Ms. Ricchio were in or affecting interstate commerce, including by his luring Ms. Ricchio to travel from Maine to Massachusetts. Furthermore, Mr. McLean benefitted through his actions against Ms. Ricchio.

63. On information and belief, and in violation of 18 U.S.C. §§ 1591(a) and 1595(a), Mr. and Ms. Patel and Bijal, through its management and personnel, knowingly harbored and maintained Ms. Ricchio at the Shangri-La Motel, and benefitted from her labor and services, knowing or in reckless disregard of the fact that means of force, fraud, coercion, and the combination of such means would be used to force Ms. Ricchio to engage in commercial sex acts. The Patels' and Bijal's acts towards Ms. Ricchio were in or affecting interstate commerce. In addition, the Patels and Bijal knowingly benefitted from participation in Mr. McLean's venture, knowing or in reckless disregard of the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Ms. Ricchio to engage in a commercial sex act. They also knowingly benefitted from participation in Mr. McLean's venture which they knew or should have known was engaged in an act in violation of the TVPA. In addition, Mr. Patel and Ms. Patel, and through them Bijal, aided and abetted Mr. McLean's violations of 18 U.S.C. § 1591(a) by providing knowing and substantial assistance to him when they knew or should have known that Ms. Ricchio was being held against her will, having been recruited, harbored, transported, provided, or obtained by any means for commercial sex acts. The Patels and Bijal also benefitted from Mr. McLean's actions including by collecting money for the motel room despite indications Ms. Ricchio was being held against her will, abused, and raped. The Patels and Bijal also profited generally from permitting illegal activity, including Mr. McLean's illegal activity, to occur on Bijal's property, burnishing the Shangri-La Motel's reputation as a haven for prostitution and criminal activity.

64.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

65.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### FOURTH CLAIM FOR RELIEF
### (DEFENDANT MCLEAN)

**Unlawful Conduct with Respect to Documents in Violation of 18 U.S.C. §§ 1592, 1595(a)**

66.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

68.     In violation of 18 U.S.C. §§ 1592(a)(1) and 1595(a), Defendant McLean removed, confiscated, and/or possessed Ms. Ricchio's government identification document in the course of a violation of 18 U.S.C. §§ 1589, 1590, 1591, and/or 1594(a); with an intent to violate 18 U.S.C. §§ 1589, 1590, and/or 1591; and/or to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Ms. Ricchio's liberty to move or travel in order to maintain the labor or services of Ms. Ricchio, who was the victim of a severe form of trafficking in persons.  Mr. McLean knowingly removed, confiscated, or possessed Ms. Ricchio's driver's license, a government issued identification document, without her consent and in furtherance of his violations of the TVPA.

69.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

70.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## FIFTH CLAIM FOR RELIEF
## (ALL DEFENDANTS)

### Conspiracy to Violate the Chapter in Violation of 18 U.S.C. §§ 1594, 1595(a)

71.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

73.     18 U.S.C. §§ 1594(b) and 1594(c) criminalizes any conspiracy to violate, among other provisions, 18 U.S.C. §§ 1589, 1590, and/or 1591.

74.     As alleged herein, all Defendants conspired to violate 18 U.S.C. §§ 1589, 1590, and/or 1591 by agreeing or conspiring to obtain or provide Ms. Ricchio's forced labor and sexual services in violation of 18 U.S.C. § 1589, trafficking Ms. Ricchio in violation of 18 U.S.C. § 1590, and sex trafficking Ms. Ricchio in violation of 18 U.S.C. § 1591.  Defendants – Mr. McLean, Mr. Patel, Ms. Patel, and Bijal (through its management and personnel) – came to an understanding to commit these violations through the course of their dealings with each other.

75.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

76.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SIXTH CLAIM FOR RELIEF
## (ALL DEFENDANTS)

**Attempt to Violate the Chapter in Violation of 18 U.S.C. §§ 1594, 1595(a)**

77.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

79.     18 U.S.C. § 1594(a) criminalizes any attempt to violate, among other provisions, 18 U.S.C. §§ 1589, 1590, and/or 1591.

80.     As alleged herein, all Defendants attempted to violate 18 U.S.C. §§ 1589, 1590, and/or 1591 by attempting to obtain or provide Ms. Ricchio's forced labor and sexual services in violation of 18 U.S.C. § 1589, trafficking Ms. Ricchio in violation of 18 U.S.C. § 1590, and sex trafficking Ms. Ricchio in violation of 18 U.S.C. § 1591.  Defendants – Mr. McLean, Mr. Patel, Ms. Patel, and Bijal (through its management and personnel) – attempted to commit acts that would have further violated these provisions TVPA, including forcing Ms. Ricchio into prostitution.

81.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

82.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SEVENTH CLAIM FOR RELIEF
## (ALL DEFENDANTS)

**Benefitting Financially from Trafficking in Persons in Violation of 18 U.S.C. §§ 1593A, 1595(a)**

83.     Ms. Ricchio realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.     Ms. Ricchio is authorized to bring this civil claim against all Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1595(a).

85.     18 U.S.C. § 1593A makes it a crime to knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of 18 U.S.C. §§ 1592, 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation.

86.     As alleged herein, all Defendants violated 18 U.S.C. § 1593A and § 1595(a) by knowingly benefitting, from participation in a venture, knowing or in reckless disregard of the fact that the venture engaged in such a violation.  In addition, and as alleged herein, Mr. McLean also violated 18 U.S.C. § 1592, and he knowingly benefitted, financially or by receiving anything of value, from participation in a venture, knowing or in reckless disregard of the fact that the venture engaged in such a violation.

87.     As a direct and proximate result of the actions of the Defendants, Ms. Ricchio has suffered severe emotional distress, physical injuries, and economic losses.

88.     Ms. Ricchio claims damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## DEMAND FOR JURY TRIAL

Ms. Ricchio is entitled to and hereby demands a jury trial in this matter.

## PRAYER FOR RELIEF

Wherefore, Ms. Ricchio respectfully requests that this Court will:

1. Enter judgment against Defendants, jointly and severally, in such amounts as will fully and adequately compensate Ms. Ricchio for the damages she has suffered, in an amount to be determined at trial;

2. Award Ms. Ricchio punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury for Defendants' violation of federal law;

3. Award Ms. Ricchio pre-judgment and post-judgment interest;

4. Award Ms. Ricchio the actual expenses of litigation, including reasonable attorney's fees;

5. Award Ms. Ricchio such other and further relief as the Court deems just and proper.

Dated: October 7, 2015

<div style="margin-left:40%">

**LISA RICCHIO**

By her attorneys,

/s/ Adam J. Hornstine
Cynthia D. Vreeland, BBO #635143
cynthia.vreeland@wilmerhale.com
Adam J. Hornstine, BBO #666296
adam.hornstine@wilmerhale.com
Kathryn E. McEvoy, BBO #680055
kellie.mcevoy@wilmerhale.com
WILMER CUTLER PICKERING
 HALE and DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

</div>